IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DORIAN YAMINI, Y36868,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| B. RICHARDS, ) | Case No. 24-cv-659-DWD |
| ROBIN BARTOCK, ) | |
| DR. DAVID, ) | |
| NURSE OHSE, ) | |
| C. TRIPP, ) | |
| WARDEN MONTI, ) | |
| WEXFORD, ) | |
| SHAWNEE CORR. CTR., ) | |
| A O'NEAL, ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Dorian Yamini, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Shawnee Correctional Center (Shawnee), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the Defendants either delayed his access to or denied him adequate medical care for severe stomach pain, which ultimately necessitated emergency surgery.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b).

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff's complaint is a single page of factual allegations accompanied by approximately 60 pages of grievance documentation and medical records. In the factual allegations, Plaintiff faults Defendants C/O Richards, Lt. Tripp, and Warden Daniel Monti for refusing to follow protocols and for refusing to either summon medical staff or to defer to their professional medical judgment. (Doc. 1 at 7). He further alleges that Tripp and 3 prison officials forced him to endure extreme conditions of confinement on January 20-21, 2022. He alleges Defendants Robin, Ashley, Amanda, and Dr. David exhibited deliberate indifference to his medical needs during a medical incident by denying or delaying care or failing to defer to the judgment of a doctor or specialist. He also faults Dr. David for failing to defer to the recommendation of a specialist by providing harmful pain medication. Plaintiff seeks monetary compensation and the termination of defendants from working at the prison. (Doc. 1 at 8).

From the exhibits, the Court can surmise that around 8:30p.m. on January 20, 2022, Plaintiff was headed back to his cell after medication lines when he collapsed. (Doc. 1 at 14). An officer called a code 3 and directed other offenders to lock up. The grievance response indicates that Defendant B. Richards called the code 3. (Doc. 1 at 17). Plaintiff

informed responding officials that he could not walk and was experiencing shortness of breath. (Doc. 1 at 14). Plaintiff was assisted with some difficulty to the bottom of a staircase where three nurses (Vicky, Amanda and a Jane Doe) were waiting. Nurse Vicky asked Plaintiff why he did not say anything about his condition minutes earlier at medication line, to which he responded he was not in pain at that time. (Doc. 1 at 15). A nurse had to run back to the medical unit to retrieve equipment to check Plaintiff's vitals. Plaintiff's vitals were normal, and after checking him one nurse told him to shut up and said he was fine. Plaintiff was returned to his cell where he laid down and stretched out.

During the evening count Plaintiff asked an officer for medical care, but the officer refused assistance. Plaintiff alleges that he laid on the floor yelling in pain and vomiting blood. Eventually, officers opened his cell for his cellmate to go to work, at which time Plaintiff also exited the cell to ask for medical attention. Plaintiff claims that he vomited twice in front of an officer while he was out of his cell. He told the officer he could not stand up straight and that his stomach was in severe pain. The officer told him to go back to his cell, and promised he would go get medical assistance. Plaintiff refused and dragged himself down the stairs using the railings.

Plaintiff alleges that an hour went by without assistance. During that time, he tried to summon help at a glass door, and he vomited. At some point a lieutenant and three correctional officers came to see Plaintiff. The grievance response indicates that the lieutenant who responded was Lt. Tripp. (Doc. 1 at 17). Plaintiff alleges that the lieutenant told him he would not being going to healthcare, and they would not call a nurse. The lieutenant told Plaintiff that his vitals had been checked earlier and were

stable, so his options were to either return to his cell or to be dragged to the receiving area. Plaintiff vomited again. The grievance response includes comments from Lt. Tripp. (Doc. 1 at 17). Tripp indicated that he was advised about the code 3 and had been told that Plaintiff was on the doctor's call line for the next morning. He personally contacted the healthcare unit staff and was told that there was nothing more that could be done by medical staff for Plaintiff that night.

The grievance response indicates that Plaintiff was seen again by a nurse around 11:15 on January 21, 2022. (Doc. 1 at 16). In the grievance response, the nurse alleges that she contacted the doctor about Plaintiff's situation and was instructed to place him on a 23-hour medical observation. Later the same day, another nurse contacted Dr. David about Plaintiff's condition and got orders to send him to the hospital. (Doc. 1 at 16).

The medical records indicate that Plaintiff presented to the hospital with abdominal pain and with complaints of nausea and vomiting. (Doc. 1 at 41). A CT scan of Plaintiff's abdomen and pelvis revealed a perforated viscus and reactive colitis. Plaintiff underwent emergency surgery at which time they discovered that he had a perforated ulcer proximal to the pylorus. The perforation was repaired, and he remained hospitalized for five days, at which point he voiced his strong desire to be discharged. (Doc. 1 at 41). The medical providers suggested he stop Meloxicam and stop NSAIDS upon discharge. (Doc. 1 at 41).

Based on the allegations in the Complaint, the Court will designate the following claims:

>   **Claim 1:** Eighth Amendment deliberate indifference claim against Defendants Monti, Richards and Tripp for their handling of Plaintiff's requests for care the night of January 20, 2022;
>
>   **Claim 2:** Eighth Amendment deliberate indifference claim against Defendants Robin Bartok, Dr. David, Nurse Ohse, and A. O'Neal for their handling of Plaintiff's medical situation.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## **Preliminary Dismissals**

Plaintiff named Shawnee Correctional Center and faulted them for failing to prevent or to care for his injuries, but a physical prison as an entity of the state is not subject to § 1983 claims. *See e.g.*, *Thomas v. Illinois*, 697 F.3d 612, 613-14 (7th Cir. 2012) (the state and state agencies are not suable "persons" within the meaning of § 1983). Accordingly, Shawnee Correctional Center is dismissed with prejudice.

Additionally, Plaintiff named Wexford, but he does not make any mention of Wexford in his factual allegations. Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*,

436 U.S. 658 (1978).  Plaintiff's complaint lacks any such allegations, so the naming of Wexford is insufficient to state a claim and they will be dismissed.

## Analysis

### Claim 1

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component.  *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010).  A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard).  *Id.*  To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference.  *Id.*  Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Prison officials who do not have a medical background may have a duty to investigate complaints of illness or injury, but they are entitled to defer to the judgment of medical professionals unless they have reason to believe the medical officials are mistreating (or not treating) an inmate.  *Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008).

Plaintiff alleges that Defendants Monti, Richards, and Tripp did not do enough in response to his requests for medical care.  His complaint alone is insufficient to maintain

a plausible claim against these three because the allegations are threadbare—all he says is that they delayed or denied him care by either refusing to call for medical staff or by deferring to them. The grievance responses illuminate the situation a bit more, providing that Richards called the code 3 and saw medical providers assess Plaintiff, and Tripp contacted medical staff of his own accord at which point he was advised they had no further care to offer until morning.

As non-medical prison officials, Richards and Tripp were entitled to defer to medical staff. Richards responded to Plaintiff's medical situation by calling for help, and he observed that medical staff assessed Plaintiff and said he was fine to return to his cell. Plaintiff cannot state any valid claim on this series of events. As to Tripp, he personally consulted with medical staff who indicated there was nothing to be done at the time. Tripp investigated and deferred, as he was entitled to do, so there is no plausible claim against Tripp.

Finally, Plaintiff named Warden Monti as a defendant, but there is no indication whatsoever that Monti knew what was transpiring on January 20-21, 2022, so there is no adequate claim against him.

## Claim 2

Plaintiff alleges that Defendants Ashley, Amanda, Nicole, and Dr. David all exhibited deliberate indifference to his needs by denying or delaying care. His allegations suggest that Ashley, Amanda, and Nicole saw him either in his housing unit on January 20, or in the medical unit on January 21. The grievance response and Plaintiff's allegations suggest that on January 20 these providers found Plaintiff's vitals to be stable,

and they put Plaintiff in to be seen the next morning. When Plaintiff was seen the next day, Dr. David was twice consulted about his situation, and upon the second contact, he approved Plaintiff's transfer to the local hospital. At the hospital, it was ultimately discovered that Plaintiff had a perforated ulcer, which was surgically repaired.

Though it seems unlikely that these facts would give rise to a finding of deliberate indifference as opposed to plain negligence or medical malpractice, the Court cannot readily determine on the face of the complaint what the eventual outcome will be in this case. Plaintiff alleges that he was left to suffer more than 12 hours in excruciating pain while vomiting blood and pleading for assistance. He claims that he personally saw these four medical providers or that they were consulted about his situation. While nurses are allowed to defer to directions from doctors, they do have an obligation to "take appropriate action" if they believe a physician's orders or course of care is woefully inadequate or could lead to further harm. *See e.g.*, *Berry v. Peterman*, 604 F.3d 435, 443-44 (7th Cir. 2010) (a nurse's deference may not be "blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient."). Here, giving Plaintiff the inferences he is due at this early juncture, it is possible that he could establish that the nurses were wrong to defer to the doctor about his situation.

In the caption of the complaint and in the listing of defendants, Plaintiff named as nurses: Robin Bartok, Nurse Ohse, and A. O'Neal. (Doc. 1 at 1-3). In the body text of the complaint he spoke of medical providers Robin, Ashley, and Amanda. (Doc. 1 at 7). In the attached grievance and grievance response, A. O'Neal was identified as the "DON" or director of nursing. (Doc. 1 at 16). R. Bartok was identified as a nurse who responded

to the code 3, along with Nurse Ohse.  The Court interprets Plaintiff's complaint as presenting a deliberate indifference claim against A. O'Neal, Robin Bartok and Nurse Ohse.

As for Dr. David, Plaintiff alleges that he is also responsible both for the response to his emergency situation and because he prescribed a pain medication either without consulting a specialist or against a specialist's recommendation.  The Court suspects that perhaps this is tied to the notation from the hospital that Plaintiff should discontinue Meloxicam and NSAIDs after his perforated ulcer, but Plaintiff does not provide enough detail in his pleading to be sure.  Because it is unclear what Plaintiff is referencing with respect to his allegations about prescription pain medication, he will not be allowed to pursue this theory against Dr. David as pled.  Plaintiff's claim against Dr. David will be solely limited to the care he directed on January 20 and 21 when consulted about Plaintiff's situation.

At this early juncture, the Court will allow Plaintiff to proceed against Defendants A. O'Neal, Nurse Ohse, Robin Bartok, and Dr. David.

## Motion for Recruitment of Counsel

Plaintiff has not filed an explicit motion for counsel that describes his reasons for requesting counsel, but he did submit correspondence that demonstrates his own attempts to retain counsel (Doc. 3).  This correspondence was docketed as a "motion" for counsel.  There is  no right to the appointment of counsel in civil matters.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010).  When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable

attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).  Plaintiff has provided proof of his own efforts to secure counsel, but he has not explained why he needs assistance at this early juncture in his case.  The Court will deny his Motion (Doc. 3) without prejudice because it is unsupported by any explanation, but Plaintiff may file a new motion for counsel later in this case if he finds it necessary.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 2** of the Complaint (Doc. 1) survives against Defendants Robin Bartok, Dr. David, Nurse Ohse, and A. O'Neal.  By contrast, **Claim 1** is dismissed in full as to Defendants B. Richards, C. Tripp, and Warden Monti. Additionally, any claim against Shawnee Correctional Center is dismissed with prejudice because the entity is not a person subject to suit under § 1983, and any claim against Wexford is dismissed as insufficiently pled.  The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants B. Richards, Warden Monti, Lt. Tripp, Wexford, and Shawnee Correctional Center.

The Clerk of Court is **DIRECTED** to prepare for Defendants: Robin Bartok, Dr. David, Nurse Ohse, and A. O'Neal: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30

days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 3, 2024

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.