**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DORIAN YAMINI (Y36868),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:24-cv-659-DWD** |
| | ) | |
| **NURSES ROBIN BARTOK, NANETTE OHSE, ASHLEY O'NEAL, AND DR. ALFONSO DAVID,** | ) ) ) | |
| | | |
| **Defendants.** | | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

In this matter, Plaintiff Dorian Yamini alleges that Defendants Robin Bartok, Nanette Ohse, Ashley O'Neal, and Dr. Alfonso David were deliberately indifferent to his complaint of severe abdominal pain while an inmate of the Illinois Department of Corrections (herein "IDOC") currently residing at Shawnee Correctional Center (herein "Shawnee"). Plaintiff alleges that Defendants Bartok, Ohse, O'Neal (nurses) and Dr. David, medical staff at Shawnee, delayed access to or denied him adequate medical care for severe abdominal pain, which ultimately necessitated emergency surgery. (Doc. 1). As construed by the Court (Doc. 10), Plaintiff's claim as to the instant Defendants is:

> Count 2: Eighth Amendment deliberate indifference claim against Defendants Robin Bartok, Dr. David, Nurse Ohse, and A. O'Neal for their handling of Plaintiff's medical situation.

Now before the Court is the motion for summary judgement filed by Defendants (Doc. 52) and memorandum in support (Doc. 53). Defendants Bartok, Ohse, O'Neal, and David move for summary judgement arguing that they were not deliberately indifferent

to Plaintiff's medical needs because they provided him with adequate treatment and evaluation, which yielded normal findings, and following a subsequent evaluation the next day, escalated treatment. Defendants also argue that Plaintiff cannot show that their actions caused him any harm. Plaintiff responded to the motion (Doc. 59) to which Defendants replied (Doc. 60). As further detailed below, the Court will grant summary judgement in favor of Defendants.

**Background**

Defendants attach 40 pages of Plaintiff's medical records to their memorandum in support of their motion for summary judgement. (Doc. 53-1). Plaintiff does not dispute the medical event and diagnosis occurred but does dispute that the finding of normal vitals ended his need for care. (Doc. 59, pg. 4). Plaintiff asserts a claim against each of the Defendants that their care fell outside of the accepted professional standards and amounted to deliberate indifference on each of their parts.

Plaintiff was first evaluated on January 20, 2022, after collapsing as he was headed back to his cell following dayroom time. (Doc 53-2 at 22:2-21). Following his fall, Shawnee initiated a Code Three, and four nurses arrived to assess his condition. (Doc. 53-2 at 20:1-18). Nurse Bartok concluded that Plaintiff's vital signs were normal and there were no concerning findings. (Doc. 53-1, pg. 7). She observed no bruising, swelling, masses, or displacement along his back or abdomen. (Doc. 53-1, pg. 7-8). Nurse Bartok also noted that upon palpating Plaintiff's abdominal region, he did not flinch, wince, or pull away. (Doc. 53-1, pg. 8). The findings were then reported to Dr. David who advised her to

inform Plaintiff that the findings were all normal and that he could remain in his housing unit. (Doc. 53-1, pg. 8).

Plaintiff was then returned to his cell and claims that around 9:15pm he began experiencing more symptoms that included worsening pain and vomiting blood, for which he then sought help from an officer that Plaintiff claims ignored him. (Doc. 53-5, pg. 5). Plaintiff claims that he was yelling in pain and throwing up blood for the following two hours. (Doc. 53-5, pg. 5). Around 11:00pm, Plaintiff left his cell and told the new shift officer, Sgt. Woodard, that he needed to see a doctor. (Doc. 53-2 at 35:6-11). He was told by the officer to return to his cell and that healthcare would be called. (Doc. 53-2 at 35:6-11). He then proceeded downstairs to seek attention from other officers, whereafter Lieutenant Tripp came to him and told him that he would not go to healthcare and that the nurses had said he was fine and "threw him back in his cell." (Doc. 53-2 at 35:6-11).

Plaintiff claims that his symptoms continued to worsen after being placed back in his cell, including spotting blood in his urine at some point. (Doc. 53-2 at 51:3-12). Plaintiff then called his father around 10:30am the next morning, who subsequently called the healthcare unit and spoke with Nurse O'Neal. (Doc. 53-2 at 56:24, 57:1-23). By 11:15 am, Nurse O'Neal examined Plaintiff. Nurse O'Neal noted that Plaintiff had a pallor appearance, purple tint to the corners of his mouth, walked with difficulty, guarded his stomach, and dry heaved. (Doc. 53-1, pg. 9). These findings were reported to Dr. David, who then had Plaintiff sent to the infirmary for 23-hour observation. (Doc. 53-1, pg. 9).

While Plaintiff was under observation, a nurse noted that he had reported to her he was in pain. (Doc. 53-1, pg. 11). The nurse reported he was experiencing severe pain

in the mid-torso that radiated to his groin and left leg. (Doc. 53-1, pg. 11). After reporting these findings to Dr. David, who ordered him to be sent to the emergency room. (Doc. 53-1, pg. 11). Plaintiff was picked up to go to the emergency room at 1:40 pm. (Doc. 53-1, p. 236)

After arriving at Heartland Regional Medical Center Emergency Room (herein "Heartland"), near 2:00 pm, the ER nurses noted his blood pressure was mildly elevated with no other abnormal vital signs. (Doc. 53-1, pg. 21). Plaintiff then received abdominal and pelvic CT scans wherein he was found to have a perforated ulcer near the lower end of his stomach. (Doc. 53-1, pg. 24-26). At 6:00 pm, he then underwent a successful surgery to repair the perforated ulcer. (Doc. 53-1, pg. 21). Following the surgery, three days later, a doctor noted that he had a fever and elevated white blood cell count, and that he met the criteria for sepsis. (Doc. 53-1, pg. 20). The cause of the sepsis was not specified and resolved after Plaintiff received antibiotics. (Doc. 53-1, pg. 20). Plaintiff was then discharged on the same day on January 26, 2022, and later noted by the hospital in post-operation visits to be recovering well. (Doc. 53-1, pg. 25-26).

**Legal Standards**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgement is "proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgement as a matter of law. Fed. R. Civ. P. 56(a); *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of demonstrating that there is a lack of genuine issue of material fact. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021). The Court considers the facts in a light most favorable to the non-movant, here the Plaintiff. *Srail v. Vill. Of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). "Inferences that are supported only by speculation and conjecture will not defeat a summary judgement motion." *McDonald v. Vill. Of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004); *cf. Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 ("[t]o successfully oppose the defendants' motion for summary judgement, [the plaintiff] must do more than raise a 'metaphysical doubt' as to the material facts . . . and instead must present definite, competent evidence to rebut the motion.").

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation modified). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm," not demand the best care possible. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To succeed on a deliberate indifference claim, the prisoner must establish that he had an "objectively serious medical condition" and that a prison official was subjectively aware of the condition and either "knowingly or recklessly disregarded it." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008); *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). A prisoner may likewise establish deliberate indifference by "demonstrating that the treatment he received was blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409

(7th Cir. 2014) (citation modified). However, this is a high bar to establish, as a medical professional is "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (citation modified) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)). Mere dissatisfaction or "disagreement with a doctor's course of treatment is generally insufficient" to establish deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). A nurse is not immune from claims of deliberate indifference because there is a supervising doctor with decision-making power; while nurses may generally "defer to instructions given by physicians, they have an independent duty to ensure that inmates receive constitutionally adequate care." *Perez v. Fenoglio*, 792 F.2d 768, 779 (7th Cir. 2015).

Plaintiff must first establish that he has an "objectively serious medical condition." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002). A medical condition is objectively serious "if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles*, 771 F.3d at 409 (citation modified). A medical condition need not be life-threatening to be serious, "it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Plaintiff must then establish that the prison official has subjective knowledge of his medical condition that they then disregard. *Snyder*, 546 F.3d at 522. Plaintiff must establish "more than negligence or even malpractice" to prove deliberate indifference. *Pyles*, 771 F.3d at 409. A mistake in professional judgement standing alone cannot be

deliberate indifference. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). However, "where evidence exists that the defendant knew better than to make the medical decision that he did, then summary judgement is improper." *Id.* (citation modified).

## Analysis

Neither Plaintiff nor Defendants dispute that Plaintiff's perforated ulcer was an objectively serious medical condition. Regardless, a reasonable jury could find that this medical condition was objectively serious. Plaintiff complained of pain over a period of less than 24 hours before being transferred to Heartland and undergoing treatment. Plaintiff required two CT scans that showed a perforated ulcer requiring surgery to fix. As such, the record supports finding that a reasonable jury could find that Plaintiff can satisfy the first prong of the deliberate indifference test as to his claim.

With regard to the second prong, Plaintiff contends that the Defendants' actions at the outset of his symptoms constituted deliberate indifference. Plaintiff was evaluated by Nurse Bartok following his initial complaints and the findings reported to Dr. David found there were no severe symptoms. (Doc. 53-1, pg. 7-8). The abdominal examination likewise did not result in any indication Plaintiff having a perforated ulcer. Plaintiff does not dispute Nurse Bartok's findings nor that he did not exhibit any behavior such as flinching, wincing, or pulling away, but does contend that a finding of normal vitals ended his need for care, constituting deliberate indifference. (Doc. 59, pg. 4).

### I. Deliberate Indifference Claim against Nurse Bartok

Nurse Bartok had only one interaction with Plaintiff. As previously discussed, Nurse Bartok conducted the initial assessment on Plaintiff, where she found no abnormal vitals nor anything remarkable from the abdominal examination. Plaintiff contends that Nurse Bartok deliberately ignored severe symptoms present in the initial examination, including internal bleeding (Doc. 59, pg. 2-3). Defendants deny that Nurse Bartok dismissed severe symptoms and that all of the findings were normal, which is substantiated by the RN Note on January 20, 2022. (Doc. 53-1, pg. 8). The undisputed facts in the record indicate that Nurse Bartok evaluated Plaintiff and proceeded accordingly.

Plaintiff disputes that the findings made by Nurse Bartok constituted deliberate indifference based on his own opinion but provides no evidence to support it. Plaintiff's disagreement with the professional judgement of Nurse Bartok does not by itself establish deliberate indifference. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). A medical professional's treatment decision can only rise to the level of deliberate indifference in the event that such a decision is a "substantial departure from accepted professional judgement, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgement." *Estate of Cole v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). If this standard is not met, then there is no showing of deliberate indifference. The record reflects that Nurse Bartok exercised her professional judgement in assessing Plaintiff, and as such, lacks the culpable mental state requiring to establish she was deliberately in different. Thus, because no reasonable juror could conclude otherwise, Defendant Bartok is entitled to summary judgement on Plaintiff's deliberate indifference claim.

## II. Deliberate Indifference Claim against Nurse Ohse

Nurse Ohse is only briefly mentioned as responding to the Code 3 with Nurse Bartok. The same standard Nurse Bartok is held to exists here in the claim against Nurse Ohse for deliberate indifference. Plaintiff contends that Nurse Ohse, like Nurse Bartok, exhibited deliberate indifference as to his condition at the time of the initial assessment. Defendants likewise contend that Nurse Ohse was not deliberately indifferent to Plaintiff's condition.

Just as the case with Nurse Bartok arose from Plaintiff's disagreement with her professional judgement, so too was his disagreement with Nurse Ohse. To reiterate, a disagreement with the professional judgement of a medical professional's assessment does not establish deliberate indifference. *Snipes*, 95 F.3d at 592. Inferring deliberate indifference from the treatment decision of the medical professional must show that the decision was so far afield of accepted professional standards to raise "the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (citing *Estate of Cole*, 94 F.3d at 262). Here, the record reflects that Nurse Ohse acted in accordance with her professional judgement just as Nurse Bartok had done. There is no indication that she disregarded her professional training, professional standards or judgment or otherwise acted with the requisite mental state required to establish deliberate indifference. Because no reasonable juror could conclude otherwise, Defendant Ohse is entitled to summary judgement on Plaintiff's claim of deliberate indifference.

## III. Deliberate Indifference Claim against Nurse O'Neal

Nurse O'Neal interacted with Plaintiff on the morning of January 21, 2022, for the first and only time after she allegedly received a call from his father informing her that his son needed medical attention. (Doc. 59, pg. 6). She conducted her assessment of Plaintiff and reported her findings to Dr. David, who ordered him to be placed under observation. (Doc. 53-1, pg. 9).

In order for Plaintiff to show that Nurse O'Neal acted with deliberate indifference, he would have to show that her care deviated from the professional standard. The "Where evidence exists that the defendant knew better than to make the medical decision that he did, then summary judgement is improper." *Whiting*, 839 F.3d at 662 (citation modified.) Here, while Nurse O'Neal was clearly aware from her examination of and symptoms exhibited byPlaintiff that he faced some risk of harm to his health, there is no evidence that ignored or disregarded it. Once she had been called to examine Plaintiff, she found that he was exhibiting concerning symptoms, which she then relayed to Doctor David. He undertook care of Plaintiff. She then followed the instructions given by Dr. David to place Plaintiff under observation. The record does not support any reasonable finding that Nurse O'Neal did not conduct herself in accordance with her professional judgement. Thus, as no reasonable juror could conclude otherwise, Nurse O'Neal is entitled to summary judgement on Plaintiff's claim of deliberate indifference.

IV. **Deliberate Indifference Claim against Dr. David**

Dr. David had no direct interactions with Plaintiff and only had contact through the interactions he had with the other defendants. Based on Nurse Bartok and Ohse's assessment of Plaintiff on the evening of January 20, 2026, Dr. David ordered Plaintiff be

sent back to his cell as there were no visible signs of a medical event. Plaintiff contends that Dr. David was not available at any point during the night before he was assessed again by Nurse O'Neal the following morning but does not present any such evidence. (Doc. 59, pg. 6). Dr. David's next interaction was when he was contacted regarding Plaintiff's symptoms the following morning where he then had him placed under medical observation. The final interaction was when he had Plaintiff transferred to Heartland for further treatment.

The record reflects that Dr. David provided Plaintiff with medical treatment based on his professional judgement and the findings of each assessment done by the nurses. Plaintiff nevertheless asserts that Dr. David failed to treat him properly and that it amounted to deliberate indifference. However, a medical professional's treatment decision can only rise to the level of deliberate indifference in the event that such a decision is a "substantial departure from accepted professional judgement, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgement." *Estate of Cole*, 94 F.3d at 261-62. Plaintiff at no point presents any evidence to show that Dr. David acted in a way that could be a substantial departure from professional standards. Instead, the record reflects that Dr. David acted in accordance with his professional judgement and when new symptoms began to appear, he immediately addressed them. Thus, as no reasonable juror could conclude otherwise, Defendant David is entitled to summary judgement on Plaintiff's claim of deliberate indifference.

**<u>Conclusion</u>**

For the aforementioned reasons, Defendants Bartok, Ohse, O'Neal, and David's motion for summary judgement (Doc. 52) is **GRANTED**. The Clerk shall enter judgement in favor of Defendants Bartok, Ohse, O'Neal, and David against Plaintiff Dorian Yamini.

**SO ORDERED.**

Dated: August 26, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.08.26 12:52:08 -05'00'

DAVID W. DUGAN
United States District Judge